UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT POOLE,<br><br>   Plaintiff,<br><br>-against-<br><br>PARSLEY ENERGY INC., MATTHEW GALLAGHER, BRYAN SHEFFIELD, A.R. ALAMEDDINE, RONALD BROKMEYER, WILLIAM BROWNING, HEMANG DESAI, KAREN HUGHES, JAMES J. KLECKNER, DAVID SMITH, S. WIL VANLOH JR., and JERRY WINDLINGER,<br><br>   Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Robert Poole, by Plaintiff's undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Parsley Energy, Inc. ("Parsley" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Parsley by Pioneer Natural Resources Company ("Pioneer").

2. On October 20, 2020, Parsley and Pioneer entered into an agreement and plan of

1

merger (the "Merger Agreement"), pursuant to which Parsley will merge with and into Pioneer, with Pioneer continuing as the surviving company (the "Proposed Transaction").

3. Pursuant to the terms of the Merger Agreement, Parsley's shareholders will be entitled to receive 0.1252 shares of Pioneer common stock per share of Parsley common stock they own (the "Exchange Ratio" or the "Merger Consideration"). Based on Pioneer's trading price on October 20, 2020, the last trading day before the public announcement of the signing of the Merger Agreement, the Merger Consideration was worth approximately $10.46 per share of Parsley common stock.

4. On or about December 4, 2020, in order to convince Parsley's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy Statement contains materially incomplete and misleading information concerning the valuation analyses performed by Parsley's financial advisors, Credit Suisse Securities (USA) LLC ("Credit Suisse") and Wells Fargo Securities, LLC ("Wells Fargo Securities" and together with Credit Suisse, the "Financial Advisors") regarding the Proposed Transaction.

6. The Proposed Transaction is expected to close in the first quarter of 2021 and the special meeting of the Company's shareholders to vote on the Proposed Transaction scheduled for January 12, 2021. Therefore, it is imperative that the material information that has been omitted from the Proxy Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise all corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to Parsley's public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Parsley's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

3

of Parlsey Class A common stock.

12. Defendant Parsley is Delaware corporation, and an independent oil and natural gas company focused on the acquisition, development, exploration, and production of unconventional oil and natural gas properties in the Permian Basin, which is located in west Texas and southeastern New Mexico and is characterized by high oil and liquids-rich natural gas content, multiple vertical and horizontal target horizons, extensive production histories, long-lived reserves, and historically high drilling success rates. Parsley's principal executive offices are located at 303 Colorado Street, Austin, Texas 78701. Parsley's stock trades on the NYSE under the ticker symbol "PE."

13. Defendant Matthew Gallagher ("Gallagher") is, and has been at all relevant times, the Company's Chief Executive Officer and President, and a director of the Company.

14. Defendant Bryan Sheffield ("Sheffield") is, and has been at all relevant times, the Executive Chairman of the Company's Board of Directors.

15. Defendant A.R. Alameddine ("Alameddine") is, and has been at all relevant times, a director of the Company.

16. Defendant Ronald Brokmeyer ("Brokmeyer") is, and has been at all relevant times, a director of the Company.

17. Defendant William L. Browning ("Browning") is, and has been at all relevant times, a director of the Company.

18. Defendant Hemang Desai ("Desai"), is and has been at all relevant times, a director of the Company.

19. Defendant Karen Hughes ("Hughes") is, and has been at all relevant times, a director of the Company.

20. Defendant James J. Kleckner ("Kleckner") is, and has been at all relevant times, a director of the Company.

21.     Defendant David Smith ("Smith") is, and has been at all relevant times, a director of the Company.

22.     Defendant S. Wil VanLoh, Jr. ("VanLoh") is, and has been at all relevant times, a director of the Company.

23.     Defendant Jerry Windlinger ("Windlinger") is, and has been at all relevant times, a director of the Company.

24.     The Defendants identified in paragraphs 13 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25.     Parsley is a publicly traded Delaware corporation headquartered in focused on the acquisition, development, exploration, and production of unconventional oil and natural gas properties in the Permian Basin, which is located in west Texas and southeastern New Mexico and is characterized by high oil and liquids-rich natural gas content, multiple vertical and horizontal target horizons, extensive production histories, long-lived reserves, and historically high drilling success rates.

26.     Parsley reports its business in a single business segment, which is oil and natural gas exploration and production. Other services that Parsley engages in are ancillary to its oil and natural gas exploration and producing activities and it manages these services to support the oil and natural gas exploration and producing activities.

27.     Prior to the announcement of the Proposed Transaction, Parsley's strategy was to increase long-term stockholder value by producing affordable and reliable energy in an efficient, safe, and sustainable manner, with strategic objectives including: (i) increasing and stabilizing free cash

5

flow generation through capital efficient development activity, (ii) enhancing returns through continued improvement in operational and cost efficiencies, (iii) developing its assets in an efficient, safe, and environmentally responsible manner, and (iv) maintaining financial flexibility with a strong balance sheet.

28. Indeed, on August 5, 2020, less than three months before the Proposed Transaction was announced, Parsley issued a press release entitled *Parsley Energy Announces Second Quarter 2020 Financial and Operating Results; Provides Update on 2020 Development Plans*, which explained that Parsley was poised for continued economic growth irrespective of the global impacts of the novel coronavirus and was "well built for that endurance test," stating in part:

> "From a macro standpoint, the second quarter represented an unforgiving stress test for much of our industry," commented Matt Gallagher, Parsley's President and CEO. "The worst may be behind us - prices have found firmer footing as oil markets seek a cautious equilibrium. However, at Parsley Energy, we harbor no illusions of the difficulties facing our industry and we remain well built for that endurance test. During this challenging second quarter, our team did not merely run in place, but instead progressed our corporate sustainability efforts on multiple fronts. On the financial front, we generated robust free cash flow and remain committed to *free cash flow sustainability* in 2021 and beyond. On the environmental front, we reduced natural gas flaring on recently acquired properties by approximately 90% and we will continue to advance our *environmental sustainability* efforts with tangible goals moving forward. I am proud of the Parsley team for focusing on controlling what was within our control and for delivering on our action plan during uncertain times."

29. Thus, the Proposed Transaction comes at a time when Parsley's future success was not fully reflected by its share price. The Proposed Transaction will "compensate" Parsley's public stockholders with Merger Consideration that fails to adequately compensate them for the intrinsic value of their shares.

30. Despite Parsley's intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives Parsley's public shareholders of the ability to partake in the Company's individual growth and instead dilutes the value of their Parsley shares with an inadequate interest in Pioneer. The Individual Defendants breached their fiduciary duties owed to Parsley's

6

shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate Merger Consideration while Company insiders receive millions of dollars in severance payments and accelerated vesting of their restricted stock units.

**The Announcement of the Proposed Transaction**

31.  On October 20, 2020, after trading markets closed, Parsley and Pioneer issued a joint press release to announce the Proposed Transaction, which stated in part:

> **Pioneer Natural Resources Announces Agreement to Acquire Parsley Energy**
>
> DALLAS & AUSTIN, Texas--(BUSINESS WIRE)—Pioneer Natural Resources Company ("PXD") ("Pioneer" or "the Company") and Parsley Energy, Inc. (PE) ("Parsley") today announced that they have entered into a definitive agreement under which Pioneer will acquire all of the outstanding shares of Parsley in an all-stock transaction valued at approximately $4.5 billion as of October 19, 2020. Under the terms of the agreement, Parsley shareholders will receive a fixed exchange ratio of 0.1252 shares of Pioneer common stock for each share of Parsley common stock owned. The total value for the transaction, inclusive of Parsley debt assumed by Pioneer, is approximately $7.6 billion.
>
> This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20201020006209/en/
>
> Scott D. Sheffield, Pioneer's President and CEO stated, "This transaction creates an unmatched independent energy company by combining two complementary and premier Permian assets, further strengthening Pioneer's leadership position within the upstream energy sector. Parsley's high-quality portfolio in both the Midland and Delaware Basins, when added to Pioneer's peer-leading asset base, will transform the investing landscape by creating a company of unique scale and quality that results in tangible and durable value for investors.
>
> This combination is expected to drive annual synergies of $325 million and to be accretive to cash flow per share, free cash flow per share, earnings per share and corporate returns beginning in the first year, creating an even more compelling investment proposition. Further, Pioneer's emphasis on environmental stewardship aligns with Parsley's culture of sustainable operations. The addition of Parsley's high-quality assets enhances Pioneer's investment framework by improving our free cash flow profile and strengthening our ability to return capital to shareholders. We look forward to integrating Parsley into Pioneer and continuing our history of strong execution."

Matt Gallagher, Parsley's President and CEO stated, "The combination of Parsley and Pioneer creates an organization set to thrive as we forge a strong new link at the low end of the global cost curve. With neighboring acreage positions located entirely in the low-cost, high-margin Permian Basin, the industrial logic of this transaction is sound. Furthermore, the Pioneer team shares our belief that a clear returns-focused mindset is the best tool to compete for capital within the broader market. Sustainable free cash flow and growing return of capital are now investment prerequisites for the energy sector and this combination strengthens those paths for our shareholders. Finally, I would like to personally thank every employee of Parsley Energy for their role in the evolution of this company – from operating a few dozen vertical wells in 2008 to a global leadership position in E&P operations today."

S. Wil VanLoh, Jr., a Parsley director and the Founder and Chief Executive Officer of Quantum Energy Partners, Parsley's largest shareholder, commented, "The inevitable consolidation in the Permian marches on and I couldn't think of a better combination of assets than Pioneer and Parsley. This combination will provide Parsley shareholders new structural advantages including a lower cost of capital, a fortified balance sheet, economies of scale, and enhanced ESG capabilities, while amplifying all of the relative strengths of our standalone model. We look forward to partnering with the Pioneer team as they cement their position as the premier independent E&P."

Strategic and Financial Benefits

- Accretive to Key Financial Metrics– Pioneer expects the transaction to be accretive on key financial metrics including cash flow and free cash flow per share, earnings per share and return on capital employed beginning in 2021. The enhanced cash flow generation of the combined company strengthens Pioneer's investment framework creating a more robust free cash flow profile while lowering the reinvestment rate to a range of 65% to 75% at strip pricing.

- Significant Synergies – The combination of Pioneer and Parsley is expected to result in annual cost savings of approximately $325 million through operational efficiencies and reductions in general and administrative (G&A) and interest expenses. The expected present value of these cost savings exceeds $2 billion over a ten-year period. Operational savings are driven by the utilization of shared facilities, overlapping operations, scale efficiencies and benefits provided by Pioneer's extensive water infrastructure. Further synergies are realized from adjacent acreage footprints and the ability to drill extended laterals where lease configurations of the separate companies prevented long-lateral horizontal wells.

- Unmatched Permian Scale – The combined company will be the leading Permian independent exploration and production company with a premium asset base of approximately 930,000 net acres with no federal acreage and a production base of 328 thousand barrels of oil per day and 558 thousand barrels oil equivalent per day as of the second quarter of 2020. Additionally, based on year-end 2019 proved reserves, this transaction will increase Pioneer's proved reserves by approximately 65%.

8

- Top-Tier Balance Sheet – Pioneer's pro forma leverage will remain among the lowest in the industry, preserving the Company's financial flexibility and allowing for significant return of capital to shareholders. The combined company is expected to benefit from approximately $75 million per year in lower interest expense and will gradually reduce net debt to EBITDAX to less than 0.75x from an already strong position.

- Sustainable Development – Pioneer and Parsley have demonstrated strong commitments to best-in-class environmental, social and governance practices. The combined company will continue to aggressively pursue improvements and promote a culture that prioritizes sustainable operations. Pioneer plans to publish a comprehensive 2020 Sustainability Report detailing its efforts in these areas during the fourth quarter of 2020.

Transaction Details

This all-stock transaction constitutes a 7.9% premium to Parsley shareholders based on unaffected closing share prices as of October 19, 2020. Pioneer will issue approximately 52 million shares of common stock in the transaction. After closing, existing Pioneer shareholders will own approximately 76% of the combined company and existing Parsley shareholders will own approximately 24% of the combined company.

The transaction has been unanimously approved by the Boards of Directors of both Pioneer and Parsley and is expected to close in the first quarter of 2021, subject to customary closing conditions, regulatory approvals and shareholder approvals. Parsley's largest investor, Quantum Energy Partners, which owns approximately 17% of Parsley's outstanding shares, has executed a Voting and Support Agreement in connection with the transaction.

Upon closing of the transaction, Pioneer's Board of Directors will be expanded to thirteen to include Matt Gallagher, Parsley's President and CEO, and A.R. Alameddine, Parsley's lead director. Pioneer's executive management team will lead the combined company with the headquarters remaining in Dallas, Texas.

Advisors

In connection with this transaction, Pioneer has retained Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC as financial advisors and Gibson, Dunn & Crutcher LLP as a legal advisor. Parsley has retained Credit Suisse Securities (USA) LLC and Wells Fargo Securities, LLC as financial advisors and Vinson & Elkins LLP as a legal advisor.

**The Preclusive Deal Protection Devices**

32. To the detriment of the Company's public shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the

Proposed Transaction is consummated and that no competing offers emerge for the Company.

33. The Merger Agreement contains restrictive "no-shop" provisions that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations. These "no-shop" provisions strictly prohibit, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations

34. Among other things, the "no-shop" provision also requires the Board to provide Pioneer with written notice of any inquiry that could reasonably expected to lead to an Acquisition Proposal within twenty-four (24) hours of its receipt, and further requires that the Board provide prior written notice of its intention to terminate the Merger Agreement due to receipt of a Superior Proposal so that Pioneer may negotiate with Parsley following Pioneer's receipt of the notice and Pioneer can adjust the terms and conditions of the Merger Agreement so that the Acquisition Proposal ceases to be a Superior Proposal.

35. In addition, the Merger Agreement provides that the Company will be required to pay to Pioneer a termination fee of $135,000,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

36. Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public shareholders' ability to disapprove the Proposed Transaction.

37. Indeed, the Proposed Transaction was negotiated through a flawed and conflicted sales process pursuant to which Parsley conducted insufficient outreach and steered the transaction to Pioneer by accelerating the merger process and negotiating the merger during the coronavirus pandemic.

38. The aggregate effect of the preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction and the flawed and conflicted sales process pursuant to which the Proposed Transaction was negotiated, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**The Proxy Statement Omits Material Information**

40. On or about November 23, 2020, in order to convince Parsley's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Proxy Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

41. The special meeting of Parsley's shareholders to vote on the Proposed Transaction is scheduled for January 12, 2021. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

42. Specifically, the Proxy Statement omits two types of material information: (i) information regarding the background of the transaction, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

**A. The Proxy Statement Omits Material Information Regarding the Fairness Analysis**

43. The Proxy Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's

Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion. Specifically, the Proxy Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations. Without this information, shareholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion. The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them. Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

44. With respect to the Company Projections beginning on Page 86, the Proxy Statement omits the following line-items used to derive Parsley's projected EBITDAX and Unlevered Free Cash Flow, without which the Company's public investors cannot reconcile the projected EBITDAX and Unlevered Free Cash Flow: (i) Revenue; (ii) Operating expenses, (iii) Income taxes, (iv) Depreciation, depletion, amortization, and exploration expense, and (v) Cash taxes.

45. With respect to Credit Suisse's *Selected Companies Analyses* beginning on Page 118, the Proxy Statement fails to provide: (i) Credit Suisse's basis and rationale for "deeming" the selected companies as "similar to Parsley and Pioneer in one or more respects," (ii) the full rationale and basis that Credit Suisse employed and relied on in selecting 2021E EBITDAX multiple reference ranges of 4.5x to 5.5x for Parsley and 5.5x to 6.5x for Pioneer, (iii) the full rationale and basis that Credit Suisse employed and relied on in selecting 2022E EBITDAX multiple reference ranges of 4.0x to 5.0x for Parsley and 4.0x to 5.0x for Pioneer, (iv) the full rationale and basis that Credit Suisse employed and relied on in selecting 2021 Calendar Year Estimated Cash Flow from Operations multiple reference ranges of 3.5x to 4.5x for Parsley and 3.5x to 4.5x for Pioneer, and (v) the full rationale and basis that Credit Suisse employed and relied on in selecting 2022 Calendar Year Estimated Cash Flow from

Operations multiple reference ranges of 3.0x to 4.0x for Parsley and 3.0x to 4.0x for Pioneer.

46. With respect to Credit Suisse's *Discounted Cash Flow Analysis—Corporate* beginning on Page 120, the Proxy Statement fails to provide: (i) Credit Suisse's full basis and rationale for applying a discount rate range of 9.5% to 11.5% for Parsley and 9.0% to 11.0% for Pioneer, (ii) Credit Suisse's rationale and basis for applying a range of EBITDAX 2024E terminal multiples of 4.75x to 5.75x for Parsley but 5.5x to 6.5x for Pioneer, (iii) an explanation for how, and whether, Credit Suisse accounted for and discounted the value of Parsley and Pioneer's net operating losses, and (iv) a full sensitivity table that summarizes the implied valuations and exchange ratios across the full range of assumptions.

47. With respect to Credit Suisse's *Discounted Cash Flow Analysis—Net Asset Value* on Page 121, the Proxy Statement fails to provide: (i) Credit Suisse's full basis and rationale for applying a discount rate range of 9.5% to 11.5% for Parsley and 9.0% to 11.0% for Pioneer, (ii) Credit Suisse's assumptions regarding the projected cash flows after the 2026 fiscal year, including the projected Free Cash Flow amounts used in the analysis, (iii) an explanation for how, and whether, Credit Suisse accounted for and discounted the value of Parsley and Pioneer's net operating losses, and (iv) a full sensitivity table that summarizes the implied valuations and exchange ratios across the full range of assumptions.

48. With respect to Credit Suisse's *Selected Transactions Analysis* beginning on Page 121, the Proxy Statement fails to fully disclose: (i) Credit Suisse's basis and rationale for "deeming" the selected transactions "relevant" and the selected target companies and assets "similar to Parsley in one or more respects," (ii) Credit Suisse's basis and rationale for excluding the transaction multiple in the Noble Energy / Clayton Williams Energy, Inc. acquisition as "Not Meaningful," and (iii) the full rationale and basis that Credit Suisse employed and relied on in selecting a multiple reference range for Parsley of Last Twelve Months EBITDAX of 4.0x to 5.5x.

49. With respect to Wells Fargo's *Discounted Cash Flow Analysis* beginning on Page 126, the Proxy Statement fails to provide: (i) Wells Fargo's full basis and rationale for applying a discount rate range of 7.75% to 9.25% for Parsley and 7.25% to 8.75% for Pioneer, (ii) Wells Fargo's rationale and basis for applying a range of EBITDAX 2024E terminal multiples of 4.75x to 5.75x for Parsley but 5.50x to 6.50x for Pioneer, (iii) an explanation for how, and whether, Credit Suisse accounted for and discounted the value of Parsley and Pioneer's net operating losses, and (iv) a full sensitivity table that summarizes the implied valuations and exchange ratios across the full range of assumptions.

50. With respect to Wells Fargo's *Selected Companies Analyses* beginning on Page 126, the Proxy Statement fails to provide: (i) Wells Fargo's basis and rationale for "deeming" the selected companies as "relevant" and "similar to Parsley and Pioneer, respectively, in one or more respects," (ii) the individual multiples for each of the selected companies, (iii) the full rationale and basis that Wells Fargo employed and relied on in selecting 2021P EBITDAX multiple reference ranges of 4.75x to 5.75x for Parsley and 4.50x to 5.50x for Pioneer, (iv) the full rationale and basis that Wells Fargo employed and relied on in selecting 2021P CFPS multiple reference ranges of 3.50x to 4.50x for Parsley and 4.50x to 5.50x for Pioneer, and (v) the full rationale and basis that Wells Fargo employed and relied on in selecting 2021P Production multiple reference ranges of $37,500 to $45,000 for Parsley and $42,000 to $46,000 for Pioneer.

51. If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest. The question is not simply whether there is a duty to speak, but also whether there may be liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths"

are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information. Thus, Defendants' omission renders the projections disclosed in the Proxy Statement misleading.

52. In sum, the omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

55. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the

light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

56.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

57.     Defendants have issued the Proxy Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

58.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

59.     The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its

fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

60. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

61. The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

62. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only

through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

63. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

67. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

70. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2020

**MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
       jfruchter@ademilaw.com

*Attorneys for Plaintiff*